Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>**Recurrida**<br><br>V.<br><br>KELVIN Y. PAGÁN LA LUZ<br>**Recurrente** | KLCE202500149 | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Caso Núm:<br>SJ2024CV05782<br><br>Sobre:<br>Daños y Perjuicios Código Anticorrupción |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente.**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 7 de marzo de 2025.

El 13 de febrero de 2025, el Sr. Kelvin Pagán De La Luz (señor Pagán o peticionario) compareció ante nos mediante una *Petición de Certiorari* y solicitó la revisión de una *Orden* que se emitió y notificó el 14 de enero de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar la *Moción de Desestimación por Doble Exposición Penal y Falta de Jurisprudencia* que presentó el peticionario.

Por los fundamentos que expondremos a continuación, *denegamos* el recurso de epígrafe.

I.

El 25 de julio de 2024, el Estado Libre Asociado de Puerto Rico (ELA o recurrido) presentó una *Demanda* sobre triple daño bajo el Art. 5.2 de la Ley Núm. 2-2018, según enmendada, conocida como *Código Anticorrupción para el Nuevo Puerto Rico,* 3 LPRA sec. 1885a (Ley Núm. 2-2018 o Código Anticorrupción) en contra del señor

Número Identificador

RES2025 _____

Pagán, la pareja de este y la Sociedad Legal de Bienes Gananciales Compuesta por Ambos, el Sr. Javier Santiago Rodríguez (señor Santiago), la pareja de este y la Sociedad Legal de Bienes Gananciales Compuesta por Ambos, Star Enterprises, Inc. (Star Enterprises), compañías aseguradoras y otros.[1] Alegó que, el peticionario era agente y director del Programa de Educación Técnica del Departamento de Educación de Puerto Rico y estaba autorizado a emitir cheques de la cuenta bancaria de dicho programa. Además, arguyó que, el señor Santiago era el único dueño, presidente y agente residente de Star Enterprises, y que dicha corporación tenía una dirección física idéntica a la dirección residencial del peticionario y el señor Santiago. Asimismo, manifestó que, el 14 de febrero de 2024, el peticionario, el señor Santiago y Star Enterprises fueron acusados por el Gobierno de Estados Unidos por el delito de hurto de programas federales y, que estos hicieron alegación de culpabilidad por dicho delito mediante un acuerdo con el Departamento de Justicia de Estados Unidos ante el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico. Señaló que, estos aceptaron haber recibido $213,210.07 de manera ilegal y provenientes el arca del Departamento de Educación. Por tanto, las partes acordaron el pago de dicha suma de forma solidaria como restitución.

De igual forma, esbozó que, la suma de $213,210.07 era dinero público que se dirigió a beneficiar de manera ilegal al señor Santiago, a Star Enterprises y al señor Pagán. Resaltó que, el peticionario era un funcionario del Departamento de Educación y venía obligado a proteger los fondos públicos. No obstante, argumentó que este se enriqueció con dinero mal habido y defraudó al Gobierno de Puerto Rico. Enfatizó que, dicha situación causó

---

[1] Véase, págs. 1-63 del apéndice del recurso.

daños tangibles al erario, la pérdida de fondos públicos y limitaciones en la prestación de servicios a la ciudadanía, por lo que era evidente que el peticionario, el señor Santiago y Star Enterprises obraron a sabiendas de que sus acciones eran culposas e ilegales. Finalmente, adujo que las resoluciones de alegación de culpabilidad eran prueba suficiente para probar la comisión de los actos u omisiones culposos, negligentes o ilícitos en menoscabo del erario. En virtud de lo anterior, solicitó la imposición de responsabilidad de manera solidaria y el pago de la indemnización por una cantidad no menor de $639,630.21 por razón del daño causado al erario, más intereses, costas y honorarios de abogado.[2]

Tras varios trámites procesales, el 19 de septiembre de 2024, el señor Pagán y el señor Santiago presentaron su *Moción de Desestimación por Doble Exposición Penal y Falta de Jurisdicción.*[3] Plantearon que, la acción del Estado vulneraba sus garantías constitucionales. Particularmente, indicaron que el principio de doble exposición prohibía que una persona fuese sancionada dos (2) veces por los mismos hechos y que, en el caso de epígrafe habían sido penalizados en el tribunal federal con una condena que incluía una restitución significativa. Sostuvo que el intento de imponer una sanción adicional en forma de triple daño carecía de justificación legal y era punitiva, toda vez que violentaba el principio de justicia económica y la prohibición de duplicidad de sanciones. Además, esgrimió que las sanciones debían ser proporcionales al daño causado y no debían exceder lo necesario para repararlo. Enfatizó que, imponer una nueva sanción era redundante e implicaba una segunda penalización. Finalmente, manifestaron que la imposición de una compensación triple violentaba la Constitución de los

---

[2] El 11 de septiembre de 2024, el TPI emitió una *Resolución* que se notificó el 13 de septiembre de 2024. En esta, anotó la rebeldía a Star Enterprises. Véase, Entrada Núm. 17 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] Véase, págs. 76-93 del apéndice del recurso.

Estados Unidos a la luz de las protecciones contra multas excesivas. Por todo lo anterior, entendieron que la restitución impuesta por el tribunal federal era compensar al Estado por el daño sufrido, que dicha restitución cubría los fondos desviados y que imponer sanciones adicionales era una acción punitiva, por lo que procedía la desestimación de la *Demanda* de epígrafe.

Por su parte, el 8 de octubre de 2024, el ELA presentó su *Oposición a Moción de Desestimación por Doble Exposición Penal y Falta de Jurisdicción*.[4] En esencia, adujo que el TPI contaba con jurisdicción sobre la materia para continuar con el caso, conforme al Código Anticorrupción, *supra*. De otra parte, esbozó que la cláusula de doble exposición era inaplicable al caso de epígrafe, toda vez que el caso no era uno penal y no pretendía juzgar la conducta delictiva del señor Pagán y el señor Santiago. Aclaró que, la sentencia dictada en el foro federal servía de prueba suficiente para probar los actos u omisiones negligentes, culposos o ilícitos en menoscabo del erario. No obstante, resaltó que el monto del daño sería establecido mediante prueba. Particularmente, alegó que el peticionario y el señor Santiago fallaron en acreditar mediante prueba que el recobro del triple daño al erario era tan punitivo, como para considerarlo criminal.

De igual forma, puntualizó que la intención legislativa trataba de una causa de acción civil y que el propósito de dicha causa de acción establecida en el Código Anticorrupción, *supra*, era disuasiva y no punitiva. Señaló que, dicho estatuto pretendía erradicar la corrupción que era un mal social que nos afecta a todos. Adicionalmente, argumentó que era inaplicable la prohibición de multas excesivas bajo la octava enmienda de la Constitución de los Estados Unidos, puesto que no se buscaba establecer o cobrar

---

[4] Íd., págs. 94-108.

alguna fianza, multa o sanción. En virtud de lo anterior, razonó que el fin del Código Anticorrupción, *supra*, era obtener una indemnización monetaria equivalente al triple daño ocasionado al erario que no guardaba relación con la pena de restitución impuesta mediante la sentencia del foro federal.[5]

Luego de examinar los argumentos presentados por las partes, el 5 de diciembre de 2024, el TPI emitió una *Resolución* que se notificó el mismo día, en la cual declaró No Ha Lugar *La Moción De Desestimación Por Doble Exposición Penal Y Falta De Jurisdicción*. En esencia, determinó que el peticionario y el señor Santiago no tenían razón al argumentar que no tenía jurisdicción sobre la controversia. Ello, cuando el propio Código Anticorrupción, *supra*, disponía que el Gobierno de Puerto Rico, a través del Secretario de Justicia, podía presentar acciones civiles ante el TPI, contra toda persona que hubiese incurrido en acciones u omisiones negligentes, culposas o ilícitas en menoscabo del erario.

A su vez, concluyó que, tampoco tenían razón respecto a que la radicación del caso de epígrafe exponía a las partes a una doble exposición y a ser objeto de multas excesivas. Indicó que, el hecho de que existiera una convicción en el foro federal no era sinónimo de que el Estado tenía derecho a recibir automáticamente la compensación solicitada de $639,630.21. Explicó que, conforme al Código Anticorrupción, *supra*, la presencia de una sentencia de convicción únicamente incidía en uno de los elementos de la causa de acción; las acciones u omisiones culposas, negligentes o ilícitas. Por ello, resolvió que seguía vigente la obligación de probar cuáles fueron los daños y la relación causal. Finalmente, adoptó los

---

[5] Íd., págs. 109-111. El 8 de noviembre de 2024, el ELA presentó su *Moción para Reiterar Oposición a "Moción de Desestimación por Doble Exposición Penal y Falta de Jurisdicción"*.

planteamientos del ELA en su *Oposición a Moción de Desestimación por Doble Exposición Penal y Falta de Jurisdicción.*

Inconforme, el 19 de diciembre de 2024, el señor Pagán y el señor Santiago presentaron su *Solicitud de Reconsideración* en la cual reiteraron sus argumentos iniciales.[6] Además, enfatizaron que no se profundizó en las circunstancias particulares del caso. Entre estas, que existía una condena penal previa en el foro federal, se satisfizo la restitución total del daño, el triple daño solicitado no agregaba valor compensatorio, la sanción adicional operaba como un segundo castigo y, que dicha restitución equivalía a una compensación excesiva. Por todo lo anterior, insistió en que procedía desestimar la *Demanda*, toda vez que era inconstitucional.

En respuesta, el 8 de enero de 2025, el ELA presentó su *Oposición a Solicitud de Reconsideración.*[7] En esta, reafirmó sus planteamientos iniciales. Asimismo, manifestó que la moción de reconsideración no estableció argumentos en derecho que movieran al TPI a variar su determinación. Añadió que, dicha moción no se fundamentó en cuestiones sustanciales relacionadas con la determinación del TPI.

Así las cosas, el 14 de enero de 2024, el TPI emitió y notificó una *Orden* declarando No Ha Lugar la *Solicitud de Reconsideración.*[8] Aún inconforme, el 13 de febrero de 2025, el peticionario presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el TPI al no tomar adecuadamente en cuenta el principio de "non bis in idem" o doble exposición penal y al mediante la restitución. Esta omisión contradice las garantías constitucionales establecidas tanto en la Constitución de Puerto Rico como en la Constitución de los Estados Unidos, que prohiben el castigo doble por la misma conducta.**

---

[6] Íd., págs. 116-125.
[7] Íd., págs. 127-134.
[8] Íd., pág. 135.

**Erró el TPI al sostener que tenía jurisdicción sobre la materia, ya que no consideró que la acción civil del Estado, al buscar una sanción adicional por conducta ya sancionada y restituida en un proceso penal, le priva de atender nuevamente la controversia ya adjudicada por otro foro.**

**Interpretó erróneamente el TP| el Artículo 5.2 del Código Anticorrupción como si permitiera la imposición de sanciones civiles, sin considerar que la naturaleza de la acción es punitiva en este contexto. La ley fue diseñada para recuperar daños, pero no para imponer sanciones adicionales a quienes ya fueron sancionados con la restitución en el proceso penal. El conceder el triple daño equivaldría en efecto a una cuádruple compensación de los daños alegadamente sostenidos.**

**El Tribunal no tuvo en cuenta que, a pesar de que la parte demandada fue condenada en un tribunal federal, la restitución ya satisfecha cubre completamente el daño económico reclamado. La falta de consideración de este hecho evidencia un error en la evaluación de la evidencia presentada.**

**Quinto Señalamiento de Error: La decisión del Tribunal no evaluó adecuadamente el principio de proporcionalidad en el contexto de la sanción impuesta. Al permitir que se reclamara un triple daño que, junto con la restitución ya impuesta, resultaría en una cuádruple compensación, el Tribunal no consideró que esto excede el daño real sufrido y constituye una sanción desproporcionada.**

**El Tribunal no realizó un análisis exhaustivo sobre si la acción civil presentada por el Estado es punitiva en su efecto. La jurisprudencia, incluida la decisión en Hudson v. United States, establece que las sanciones civiles pueden ser consideradas punitivas si exceden el daño reparado, lo que no fue debidamente evaluado por el Tribunal.**

**El Tribunal desestimó sin fundamento los argumentos de la parte demandada sobre la inconstitucionalidad de la sanción, específicamente en relación con la Octava Enmienda y las multas excesivas. La falta de un análisis de proporcionalidad y la ausencia de mecanismos que limiten el alcance de la sanción impuesta son aspectos que debieron ser considerados.**

Atendido el recurso, el 18 de febrero de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 24 de febrero de 2025 para presentar su oposición al recurso. No obstante, el 20 de febrero de 2025, el ELA presentó una *Solicitud de Término Adicional.* Cónsono con lo anterior, el 24 de febrero emitimos una *Resolución* concediéndole hasta el 6 de marzo de 2025, para

presentar su alegato en oposición. Conforme ordenado, el 24 de febrero de 2025, la parte recurrida presentó su posición en contra del recurso el 6 de marzo de 2025.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nuestra consideración. *Veamos.*

## II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la

admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, s*upra,* es determinante por sí solo para el ejercicio de jurisdicción, y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra. La norma vigente es que un tribunal apelativo solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error

en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009); *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

### III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

### IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones